U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 1 1 2015

TONY R. MOORE  CLERK
BY _____ UT _____
                    DEPUTY

UNITED STATES DISTRICT COURT                    b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


CURTIS JONES,                    CIVIL ACTION
        Plaintiff               SECTION "P"
                                 NO. 1:14-CV-00910
VERSUS

GWEN UNKNOWN, et al.,            JUDGE DEE D. DRELL
        Defendants              MAGISTRATE JUDGE JAMES D. KIRK


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Curtis Jones ("Jones") on April 21, 2014 (Doc. 1) and amended on May 29, 2014 (Doc. 6). The named defendants are Gwen Warren, a nurse employed at the LaSalle Correctional Center ("LCC") in Olla, Louisiana, and an unnamed doctor employed at LCC. Jones contends that, when he was incarcerated in the LaSalle Correctional Center ("LCC") in St. Gabriel, Louisiana (in 2013), he was denied medical care for lung cancer. For relief, Jones asks for "help… for the violation of [his] rights" (Doc 6). Jones is presently incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana (Doc. 6).

Warren answered the complaint (Doc. 15) and filed a motion

1

for summary judgment with documentary evidence and Jones' deposition transcript (Docs. 44, 45).   Jones filed a brief opposing Warren's motion (Doc. 49), to which Warren replied (Doc. 50).

The unknown doctor at LCC was never named and was not served (Doc. 14).   Accordingly, the complaint against the unknown doctor should be dismissed pursuant to Fed.R.Civ.P. 4(m).   See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 647 (1994); Systems Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).

Warren's motion for summary judgment is now before the court for disposition.

Law and Analysis

Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for

2

purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for

trial.   In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.  Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).   However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.  Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Jones' Factual Allegations and Medical Records

Jones contends that, when he was in another facility prior to being transferred to LCC, he was sent to a hospital for a "little black spot" on his chest (Doc. 6).  Jones contends the doctor at the hospital told him he was going to have another appointment for removal of the black spot (Doc. 6).  Jones contends that, before that appointment, he was transferred to the LCC (Doc. 6).  At LCC, Jones made a sick call for pain caused by the black spot and was given Tylenol; when he told Nurse Warren and the doctor what the other doctor had said, Nurse Warren told him she would make another appointment for Jones to return to the hospital, but she never did (Doc. 6).  Jones contends he was subsequently sent to the hospital when because he became very sick, and new tests showed the "little black spot" on his chest had spread all over his chest and stomach (Doc. 6).  Jones alleges the doctor set up more appointments for Jones, but he was not taken to any of those appointments for two

4

to three months (Doc. 6).

Jones was incarcerated in the West Carroll Detention Center from September 2011 through March 14, 2012 (Doc. 26, pp. 1 & 12/46).  In May 2012, it was noted that Jones had complained of chest pain two months previously and had been given a cardio stress test, which was negative (Doc. 24, pp. 4, 92/98).  There is no evidence in the medical records from WCDC that Jones had cancer during that period of time (Doc. 26).

Jones' records show he was transferred to LCC on June 14, 2012 (Doc. 24, Ex. 1, pp. 61, 63/98).  Jones saw the prison doctor at LCC six times between June 2012 and June 2013 (Doc. 24, p. 81/98).  In June 2013, Jones complained to the prison doctor of chest pain for which he had undergone a cardio stress test (Doc. 24, pp. 92-98/98).

Jones' medical records from LCC include a medical report from Huey P. Long Medical Center dated August 30-31, 2013, stating that Jones was evaluated at Huey P. Long Hospital for chest pain, a CT scan revealed a "mass" in the upper lobe of his lungs (Doc. 28, Ex. 1, pp. 8012/39).  A pulmonologist at LSU-Shreveport was consulted and Jones was told he would be called within a week for an appointment and a bronchoscopy; no masses were found elsewhere (Doc. 28, Ex. 1, pp. 8-12/39).  The final diagnosis was "mass in chest" (Doc. 28, Ex. 1, p. 33/39).  The LCC medical records also

show that, on August 29, 2013, Jones sent a request, at LCC, for medical care, which was approved by Nurse Warren on August 30, 2013 with the notation that Jones had been sent to the ER on August 30, a mass had been found in his lung, and an appointment had been set up with the LSU Pulmonology clinic (Doc. 24, p. 80/98). Curtis was seen in the LSU-Shreveport GI Lab on October 9, 2013 (apparently for a bronchoscopy) (Doc. 24, p. 78/98; Doc. 37, Ex. 4, p. 3/230). On October 17, 2013, the LSU-Shreveport Oncology Department wrote to remind the prison officials and Jones that he had an appointment on October 30, 2013 (Doc. 24, p. 91/98). Also on October 17, 2013, Nurse Warren wrote a transfer request for Jones, requesting that Jones be transferred out of LCC because he had just been diagnosed with lung cancer (Doc. 24, Ex. 1, p. 74/99). Jones was transferred from LCC to Elayn Hunt Correctional Center in St. Gabriel, Louisiana on October 28, 2013 (Doc. 24, p. 57/98).

Jones was seen in the Nuclear Medicine Clinic at the LSU Public Hospital in New Orleans on November 26, 2013; at that time, he was incarcerated in the Elayn Hunt Correctional Center (Doc. 37, Ex. 2, p. 26/252). Dr. Ramah Singh noted that Jones had newly diagnosed small cell carcinoma (malignant lung cancer) *and had not received any radiation or chemotherapy* (Doc. 37, Ex. 2, pp. 29, 45/252). Additional testing was ordered and revealed a large mass

6

in the left lung and pulmonary arteries which had spread to the pneumothorax since the prior CT scan, a pancreatic mass, a lesion (possibly metastatic) on the abdomen pelvis, a lesion on the liver which was likely metastatic, a possible lesion or nodule on his kidney, an adrenal nodule, an abnormality on the left side of the skull, and hypermetabolic activity throughout the large bowel with blood in his stool (Doc. 37, Ex. 2, pp. 30-33, 46-48, 54-57/252). Dr. Singh diagnosed malignant neoplasm of the bronchus and lung (Doc. 37, Ex. 2, p. 42/252).

Jones was seen again at the LSU Hospital in New Orleans on January 16, 2014 for complaints of chest pain (Doc. 27, Ex. 2. pp. 67-72/252).  Dr. Matthew Gestaut wrote that Jones has Stage IV small cell lung cancer via CT scan and nuclear medicine, and that it was a "known diagnosis previously worked up and untreated, due to the patient being lost to follow up after being discharge[d] to prison and missing follow up appointments.  He had stage 1 cancer which was untreated and now has stage IV cancer upon representation" (Doc. 37, Ex. 2, pp. 77-79/252).

On February 5, 2014, Dr. Elie Chalhoub wrote in Jones' oncologic history:

> "History goes back to 8/2013 when he had a LUL complete atelectasis on CT chest, when he presented to ER with chest pain and abdominal pain.  His CT abc at that time showed no metastatic disease.  He had MULTIPLE TREATMENT DELAYS.  He underwent bronchoscopy on 10/2013 showing LUL mass with

7

complete lumen obstruction, biopsied.   Path came back on
10/2013 with small cell lung cancer.   *He was lost to follow
up after, was supposed to be seen by oncology at LSU
Shreveport and I am not sure why this didn't happen.*   In
11/2013 he underwent a repeat CT scan with PET scan showing
7.3x4.6 cm. LUL mass, encasing L pulm artery, L main pulm
artery, and other small branches, with right supraclavicular
LN, paratracheal, precarinal, prevascular LN, and Rt axillary
LN (see PET result).   He also had a liver lesion (SUV 4.5),
? adrenal metastases, pancreatic body mass (SUV 20.3, Rt.
Kidney mass (SUV 6.6), Tr. Acetabular lesion, ? metastases."
(Doc. 37, Ex. 4, p. 3/230).   (Emphasis added.)

<u>Nurse Warren</u>

In her motion for summary judgment (Doc. 44), Nurse Warren,

a Licensed Practical Nurse ("LPN") employed at LCC, contends that

Jones has failed to exhaust his administrative remedies, his claim

is prescribed, he has not stated a claim, and she has qualified

immunity.

### 1. Prescription

State law supplies the applicable limitations period and

tolling provisions in federal actions.   <u>Harris v. Hegmann</u>, 198

F.3d 153, 157 (5th Cir. 1999), and cases cited therein.   Section

1983 actions in Louisiana are governed by a one year prescriptive

period.   La.C.C. art 3492; <u>Wilson v. Garcia</u>, 471 U.S. 261, 105

S.Ct. 1938 (1985); <u>McGregor v. LSU Bd. of Supervisors</u>, 3 F.3d 850,

864 (5th Cir. 1993), cert. den., 510 U.S. 1131, 114 S.Ct. 1103

(1994).   This prescriptive period commences to run from the date

injuries or damages are sustained, <u>Washington v. Breaux</u>, 782 F.2d

553, 554 (5th Cir. 1986) or, under the doctrine of contra non valentum, from the time the plaintiff knew or could reasonably have known he had a cause of action, McGregor, 3 F.3d at 865. Also, Corsey v. State Dept. of Corrections, 375 So.2d 1319, 1322 (La. 1979).

Jones was diagnosed with lung cancer on August 30-31, 2013 and he filed his complaint on April 21, 2014.

Warren's argument that Jones' one year limitations period began to run in 2012 hinges on the fact that Jones testified at his 2015 deposition that he had a CT scan in the Jefferson Parish Detention Center in 2012, before he was transferred to LCC, which showed a "spot" on his chest that he was told needed to be removed (Doc. 42, Ex. 8, p. 21/173). Warren contends that Jones repeatedly told the nurse, in his first two weeks at LCC, that he had a "spot" on his chest that needed to be removed. Despite the fact that Jones testified that a CT scan at LSU in New Orleans showed a "spot" on his chest before he was in LCC, there are no medical records from LSU Medical Center in New Orleans which indicate a diagnosis of lung cancer in 2012 (See Doc. 37, Ex. 2, pp. 9-25/252), and Warren has not pointed to any.

Jones's prison record shows he was in LCC from June 14, 2012 (Doc. 24, p. 61/98) to October 17, 2013 (Doc. 24, Ex. 1, p. 74/99), and Jones' medical records show he was first diagnosed with lung

9

cancer on August 30-31, 2013, and not before.  Therefore, Jones'
one year limitation period ran from August 30, 2013 and his
complaint was filed within that one year period on April 21, 2014
(Doc. 1).

Defendants' motion for summary judgment on the ground of
prescription should be denied.

Exhaustion

Warren contends that Jones' complaint should be dismissed
because he failed to exhaust his administrative remedies before
filing this suit.

No action shall be brought with respect to prison conditions
under section 1983 of this title, or any other Federal law, by a
prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are
exhausted.  42 U.S.C.  § 1997e(a).  Jones v. Bock, 549 U.S. 199,
211, 237 S.Ct. 910, 918-919 (2007).  Exhaustion is mandatory,
irrespective of the forms of relief sought and offered through
administrative remedies.  Booth v. Churner, 532 U.S. 731, 741 n.
6, 121 S.Ct. 1819 (2001).  The exhaustion requirement of 42 U.S.C.
§ 1997e applies to all inmate suits about prison life, whether
they involve general circumstances or particular episodes, and
whether they allege excessive force or some other wrong.  Porter
v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).  Resort

10

to a prison grievance process must precede resort to a court. Porter, 534 U.S. at 529, 122 S.Ct. at 990.

However, the exhaustion requirement imposed by amended § 1997e is not jurisdictional. Woodford v. Ngo, 548 U.S. 81, 101, 126 S.Ct. 2378, 2392 (2006). The exhaustion requirement may be subject, in rare instances, to certain defenses such as waiver, estoppel, or equitable tolling. Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003).

Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910, 921 (2007); Torns v. Mississippi Dept. of Corrections, 301 Fed.Appx. 386, 388 (5th Cir. 2008); Carbe v. Lappin, 492 F.3d 325, 327-328 (5th Cir. 2007). Where the complaint does not clearly show that the inmate failed to exhaust administrative remedies, it is defendant's job to raise and prove such an affirmative defense. Torns, 301 Fed.Appx. at 389; Carbe, 492 F.3d at 328.

Jones admits he did not file a grievance, but contends he asked for a grievance form, and the prison officials refused to give him one and threatened to "lock him up" for asking (Docs. 1, 6). Jones further contends that he has "literacy deficiencies," the inmate paralegal at LCC was not allowed to assist inmates with

11

grievances, and he was unable to file a grievance on his own (Doc. 49).

First, it is noted that Jones was able to fill out and sign his original and amended complaints (Docs. 1, 6). Second, Jones could have filed a grievance concerning the denial of medical care at LCC from Elayn Hunt Correctional Center. "When an offender has filed a request at one institution and is transferred prior to the review, or if he files a request after transfer on an action taken by the sending institution, the sending institution shall complete the processing through the first step response. The warden of the receiving institution shall assist in communication with the offender." La. Admin. Code 22:I.325(F)(3)(a)(xi).

Moreover, although Jones contends that prison officials at LCC refused to give him a grievance, he could have obtained one when he was transferred to another prison in October. If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility. Stated another way, the grievance filing period is tolled only so long as the inmate is actually impeded from invoking and exhausting the process. Dillon v. Rogers, 596 F.3d 260, 267–268 (5th Cir. 2010), citing Bryant v. Rich, 530 F.3d 1368, 1379 (11th Cir. 2008).

12

The Fifth circuit adheres to a "strict" approach to the exhaustion requirement, refusing to accept mere "substantial compliance" with administrative procedures.  However, the Fifth Circuit has "long recognized the importance of ensuring that inmates have avenues for discovering the procedural rules governing their grievances." Leggett v. Lafayette, __Fed.Appx.__, 2015 WL 1069145 (5th Cir. 2015), citing Dillon, 596 F.3d at 267, 269.

Defendant contends the LCC has promulgated its own grievance procedures and does not use the grievance procedures set forth in the Louisiana Administrative Code.  The LCC grievance procedures do not require that a grievance be submitted on a form, but requires that a grievance contain the sentence, "This is a grievance under the Administrative Remedy Procedure" (Doc. 24, p. 18).  Warren contends that Jones should have submitted a grievance within 30 days from the date he discovered he had cancer (August 31, 2013), in accordance with the LCC grievance procedures.

La.R.S. 15:1171(A) and (B) provides that a sheriff may adopt an administrative remedy procedure governing any grievances or complaints, including those seeking monetary relief for personal injuries, by offenders in the sheriff's custody.  Once promulgated, such administrative procedures "shall provide the exclusive remedy available to the offender for complaints or

13

grievances governed thereby insofar as federal law allows." La.R.S. 15:1171(B). FN1  Stokes v. Strain, 1999-1150 (La. App. 1 Cir. 6/23/00), 768 So.2d 619, 621.

Since Jones admits that he did not exhaust his administrative procedures, Warren's motion for summary judgment for lack of exhaustion should be granted.

Jones' Claim for Denial of Medical Care

Warren also contends she is entitled to a summary judgment because Jones failed to state an Eighth Amendment claim for denial of medical care.

When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety, it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him but from the limitation which it has imposed on his freedom to act on his own behalf. Hare v. City

---

1 It is noted that Warren has not shown that the administrative remedy process used at LCC was promulgated in accordance with the Louisiana Administrative Procedure Act, La.R.S. 49:954, by publication in the Louisiana Register.  See La.R.S. 15:1171(B).

of Corinth, 74 F.3d 633, 639 (5th Cir. 1996), and cases cited therein.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976). A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, i.e. deliberate indifference to a prisoner's constitutional rights, to be subjected to a § 1983 liability to that prisoner. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1976 (1994).

The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980 (1994). An inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition. Estelle, 97 S.Ct. at 291.

15

Disagreement with medical treatment also does not state a claim for Eighth Amendment indifference to medical needs.  Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care.  Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).  The court may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.  Hope v. Pelzer, 536 U.S. 730, 737-738, 122 S.Ct. 2508, 2514-2515 (2002), and cases cited therein.

In the case at bar, Jones was diagnosed with Stage I lung cancer on August 31, 2013, and was told to return within a week for a follow-up appointment with the pulmonology clinic (Doc. 24, Ex. 1, pp. 74-76/98; Doc. 28, pp. 5-39/39).  There is no record that Jones went to the pulmonology clinic, but he was seen in the LSU-Shreveport GI lab on October 9, 2013, apparently for a

16

bronchoscopy (Doc. 24, p. 78/98; Doc. 37, Ex. 4, p. 3/230).  Jones next had an appointment with the oncology clinic on October 30, 2013 (Doc. 24, p. 74/98).  However, on October 17, 2013, Warren sent a written request to have Jones transferred out of LCC because of his lung cancer, and Jones was transferred from LCC to Elayn Hunt Correctional Center FN2 on October 28, 2013 (Doc. 24, p. 57/98).

Jones next saw a doctor in November 2013, when he had a repeat CT scan that showed he had lung cancer (Doc. 37, Ex. 2, p. 27/252. In January 2014, two physicians each noted that Jones had missed several appointments and had never been provided treatment for his Stage I small cell carcinoma, which had progressed to Stage IV (Doc. 37, Ex. 2, pp. 29 & 77/252).FN3

The only evidence that there were delays in Jones' cancer treatment are the doctors' notes that Jones had missed several appointments.  Those notes do not show when those appointments

_____

2 Elayn Hunt Correctional Center provides Level I medical care, meaning it has 24 hour in-patient care facility, a physician on-site 24 hours a day or readily available, and the inmates need consultation or management by special medical staff not available at other institutions, such as stroke, cancer, bed-confined, AIDS, and nursing home type patients.  See Department of Public Safety and Corrections, Corrections Services, Information Report from the Legislative Auditor (March 2006), available at http://www.lla.state.la.us/PublicReports.nsf.

3 In her affidavit, Warren recounts Jones' medical records at LCC and states that Jones' LCC medical records prior to August 30, 2013 show that "Jones was not in need of medical care for cancer or in need of medical care that he did not receive" (Doc. 45, Ex. 1).  Warren does not address, however, the period between August 31, 2013 and October 28, 2013, which is the time period at issue in this case for delay in medical care.

were or whether Jones missed any appointments while he was in LCC. The delays could have been because the pulmonology (or GI) clinic could not see him earlier, or the oncology clinic could not start his treatment earlier, or it could have been for some cause attributable to the prison.  It is critical, however, that Jones has not alleged or shown that Warren personally and intentionally delayed any of Jones' appointments.

Therefore, although Jones' cancer treatment appears to have been delayed for unknown reasons and those delays adversely affected Jones, Jones has not shown that LPN Warren was responsible for any delays in Jones' cancer treatment while he was at LCC. Since Jones has not shown that Nurse Warren denied or delayed his medical care while he was at LCC, Nurse Warren's motion for summary judgment should be granted.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Warren's motion for summary judgment (Doc. 44) be GRANTED and that Jones' action be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served

with a copy thereof.   No other briefs (such as supplemental objections, reply briefs etc.) may be filed.   Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.   Timely objections will be considered by the district judge before making a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 11th day of August 2015.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE